NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHRISTINA LORISH,

                          Plaintiff,

            v.

SUN PHARMACEUTICAL INDUSTRIES
INC.,

                          Defendant.

Civil Action No. 25-15437 (MAS) (JBD)

**MEMORANDUM OPINION**

SHIPP, District Judge

This matter comes before the Court upon Defendant Sun Pharmaceutical Industries, Inc.'s[1] ("Defendant") Motion to Dismiss (ECF No. 4) Plaintiff Christina Lorish's ("Plaintiff") Complaint (ECF No. 1-1). Plaintiff opposed (ECF No. 10), and Defendant replied (ECF No. 11). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendant's Motion to Dismiss is granted.

I.    BACKGROUND

      A.    Factual Background[2]

Plaintiff, a fifty-nine-year-old individual residing in North Carolina, has worked in the pharmaceutical industry since 1995. (Compl. ¶¶ 1, 5, ECF No. 1-1.) Defendant is a foreign

---

[1] The entity was incorrectly pled as "Sun Pharmaceuticals Industries Inc." (Def.'s Moving Br. 1, ECF No. 4-1.)

[2] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

for-profit corporation with its principal place of business in Princeton, New Jersey. (*Id.* ¶ 2.) Defendant hired Plaintiff in January 2021 as an "Oncology Account Manager." (*Id.* ¶ 6.)

Throughout her three and a half years of employment with Defendant, "Plaintiff consistently received positive feedback from management, including, among other things, performance evaluations rated 'Exceptional' and 'Exceeds Expectations.'" (*Id.* ¶ 7.) "Plaintiff was [also] [r]anked first of [twenty-four] individuals" and received "back-to-back Circle of Excellence Awards in 2023 and 2024." (*Id.* ¶ 8.) In July 2023, Plaintiff was the only representative to be promoted to a Senior Oncology Account Manager role. (*Id.* ¶ 9.)

On April 1, 2024, Plaintiff was directed to begin reporting to Michelle Hirschl, KAD ("Hirschl").[3] (*Id.* ¶ 10.) One week later, on April 8, 2024, Plaintiff tripped and injured her foot, resulting in a formal diagnosis of "contusion of the left foot." (*Id.* ¶ 13.) Plaintiff's discharge orders stated, in relevant part, that "[Plaintiff] may continue primarily seated work with the ability to elevate foot as needed for two weeks. Please allow patient to attend meetings virtually." (*Id.* ¶ 14.) Despite these restrictions, Plaintiff participated in a formal face-to-face introductory meeting with Hirschl. (*Id.* ¶ 15.) During this meeting, "Hirschl stated that she refused to acknowledge or heed Plaintiff's work restrictions and directed Plaintiff to attend the National Fast Start Meeting in Chicago, Illinois[,] from April 15 to 19, 2024[,] and that no virtual meeting options would be made available." (*Id.* ¶ 16.)

Plaintiff advised Alison Cho ("Cho"), Defendant's Human Resources Manager, of Hirschl's refusal to provide accommodations for Plaintiff, but "Cho failed and refused to engage in a back-and-forth dialogue with Plaintiff" regarding her needed accommodations. (*Id.* ¶¶ 17, 18.)

_____

[3] Plaintiff believes that Hirschl "has a reputation of discrimination (by way of, among other things, termination) against female employees, which included at least five other employees" of Defendant. (Compl. ¶ 11.)

2

Rather, "Cho directed Plaintiff to use vacation days to 'cover' any 'time off.'" (*Id.* ¶ 19.) Defendant also "denied [Plaintiff] from taking short-term disability as a result of her injury" and refused to let Plaintiff take meetings virtually in accordance with her discharge orders. (*Id.* ¶¶ 20, 21.)

Prior to terminating Plaintiff, "Hirschl solicited information from Plaintiff's former manager and colleagues[] concerning her personality, work-ethic, and collaboration/communication skills[,]" but failed to disclose to Plaintiff that she was being investigated. (*Id.* ¶¶ 22, 23.) Defendant "subjected Plaintiff to unstructured interviews by management and colleagues for the sole purpose of providing character assessments to Hirschl." (*Id.* ¶ 24.) Additionally, from May 21 to 23, 2024, Hirschl accompanied Plaintiff on a "field ride" to allegedly "observ[e] Plaintiff's interactions with providers and to provide feedback[] concerning business planning, product and scientific knowledge, and time management." (*Id.* ¶ 25.) According to Plaintiff, the "field ride" "was a sham and a thinly-veiled scheme orchestrated by Hirschl to provide a manufactured basis for terminating Plaintiff's employment." (*Id.* ¶ 26.) During the "field ride," Hirschl "fabricated pretexts" and "falsely claimed that Plaintiff was unprepared, unfamiliar with her accounts, and unable to recall significant information about the accounts and territory." (*Id.* ¶¶ 29, 30.) Ultimately, Plaintiff's performance during the "field ride" was rated as "needs improvement"[4] even though there were "no written or verbal communications from Plaintiff's assigned Health Care Providers (['] HCP['']) in her territory to support it."[5] (*Id.* ¶ 28.)

---

[4] "Throughout Plaintiff's entire [thirty]-plus year career, she never received a 'needs improvement' rating" before this. (Compl. ¶ 27.)

[5] Hirschl also accused Plaintiff of "not being aware of an HCP's relocation to a new office[,]" even though "Plaintiff actually advised Hirschl of said HCP's relocation." (Compl. ¶¶ 31, 32.)

Hirschl then directed Plaintiff to reclassify previously-approved administrative office days as paid time off (the "PTO") and/or vacation days going back to January 1, 2024. (*Id.* ¶ 32.) Plaintiff complied with the directive out of fear of retaliation. (*Id.* ¶ 34.) Defendant subsequently: (1) "accused [Plaintiff] of falsifying documentation[] concerning HCP visits, 'Cash' reimbursements, and reimbursement of non-business expenses" even though Hirschl directed Plaintiff and other similarly-situated employees to document expenses in such a manner; (2) failed to investigate, discipline, and/or terminate other similarly-situated employees for similar conduct; and (3) failed to provide Plaintiff with a performance improvement plan over alleged concerns with Plaintiff's performance. (*Id.* ¶¶ 35, 36, 37.) Moreover, Defendant failed to pay Plaintiff for: (1) unused PTO or compelled Plaintiff to use PTO for business-related travel; (2) a 2023-2024 Circle of Excellence Award trip to Aruba; and (3) 2024 vested commissions. (*Id.* ¶ 38.) Less than two months after Plaintiff began reporting to Hirschl, Defendant refused to promote Plaintiff despite her qualifications, instead terminating Plaintiff and replacing Plaintiff with "an individual half her age." (*Id.* ¶¶ 4, 12, 39.)

### B.    Procedural Background

In August 2025, Plaintiff initially brought this case in the Superior Court of New Jersey, Mercer County, and Defendant subsequently removed to this Court. (*See generally* Not. of Removal, ECF No. 1.) Plaintiff's Complaint asserts five causes of action: (1) violation of Title VII of the Civil Rights Act ("Title VII") ("Count One"); (2) violation of the Age Discrimination in Employment Act (the "ADEA") ("Count Two"); (3) violation of Title I of the Americans with Disabilities Act (the "ADA") ("Count Three"); (4) violation of the New Jersey Law Against Discrimination (the "NJLAD") ("Count Four"); and (5) promissory estoppel ("Count Five"). (*See* Compl. ¶¶ 40-69.) On October 12, 2025, Defendant moved to dismiss the Complaint in its entirety.

(*See generally* Mot. to Dismiss, ECF No. 4.) Plaintiff opposed (*see generally* Pl.'s Opp'n Br., ECF No. 10) and Defendant replied (*see generally* Def.'s Reply Br., ECF No. 11).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure[6] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been

---

[6] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III.     DISCUSSION

Defendant argues that: (1) Counts One, Two, and Three should be dismissed because Plaintiff failed to exhaust her administrative remedies by not timely filing her Equal Employment Opportunity Commission ("EEOC") charge; (2) Plaintiff's claims underlying Counts One and Three were not referenced in the charge; (3) Count Four fails because Plaintiff is not covered by the NJLAD; and (4) Plaintiff fails to plead the elements of promissory estoppel. (*See generally* Def.'s Moving Br.) The Court first turns to Defendant's arguments made in favor of dismissing Counts One, Two, and Three.

#### A.     Counts One, Two, and Three

Defendant argues that Counts One, Two, and Three should be dismissed because Plaintiff did not file a complaint with the EEOC within the required 180-day window and Plaintiff's EEOC complaint did not reference claims under Title VII or the ADA in the late-filed charge. (*See id.* at 5-7.) Plaintiff argues that she timely filed her EEOC charge because she had 300—and not 180—days to file and her Title VII and ADA claims "stem from the same nucleus of operative facts giving rise to Plaintiff's ADA claim alleging discrimination and, therefore, Plaintiff's filing of the EEOC [c]harge satisfies the exhaustion doctrine's purpose." (Pl.'s Opp'n Br. 4-7.)

Filing an EEOC charge is a precondition to pursuing a claim under Title VII, the ADEA, and the ADA. *See Foster v. JLG Indus., Inc.*, 199 F. App'x 90, 93 (3d Cir. 2006) ("A Title VII claimant must exhaust administrative remedies prior to seeking relief in federal court."); *Hildebrand v. Allegheny County*, 757 F.3d 99, 109 (3d Cir. 2014) ("Before an employee may file suit under the ADEA, . . . a plaintiff is required to exhaust administrative remedies by filing a

charge of discrimination with the EEOC."); *Phillips v. Sheraton Soc'y Hill*, 163 F. App'x 93, 94 (3d Cir. 2005) ("The ADA requires that, prior to bringing a civil action in court, a plaintiff must exhaust [her] administrative remedies by filing a charge with the EEOC." (citations omitted)). Moreover, "'[a] complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of th[at] precondition to the suit . . . : prior submission of the claim to the EEOC or conciliation or resolution.'" *Foster*, 199 F. App'x at 93 (citation omitted) (discussing requirement for Title VII claims); *see also Hildebrand*, 757 F.3d at 102 (holding that although "a plaintiff is not obligated to plead exhaustion of administrative remedies with particularity, [a plaintiff] may instead allege in general terms that the required administrative process has been completed" for an ADEA claim); *Phillips*, 163 F. App'x at 95 (providing plaintiff an opportunity to remedy deficiencies identified in district court's dismissal, including "alleg[ations of] exhaustion of his administrative remedies" for his ADA claim).

Here, Plaintiff's Complaint is entirely devoid of allegations that she exhausted her administrative remedies before bringing her Title VII, ADEA, and ADA claims. (*See generally* Compl.) For this reason alone, the Court finds that dismissal is appropriate.[7]

---

[7] The Court recognizes that Defendant attaches the purported EEOC charge to its motion. (*See* Ex. A to Def.'s Mot. to Dismiss, ECF No. 4-2); *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (noting that court may consider documents "integral to or explicitly relied upon in the complaint . . . without converting the motion to dismiss into one for summary judgment" (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997))). Plaintiff in opposition also makes arguments related to her filing of an EEOC charge. (*See, e.g.*, Pl.'s Opp'n Br. 6 (acknowledging "Plaintiff's filing of the EEOC [c]harge").) To the extent Plaintiff is trying to cure the deficiencies of her Complaint by acknowledging the EEOC charge in her opposition, such an attempt is rejected by this Court. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (alteration in original) (internal quotation marks and citation omitted)); *see also Wealth v. Fox Rothschild LLP*, No. 23-3194, 2024 WL 3371354, at *6 n.11 (D.N.J. July 11, 2024) ("It is well settled that [p]laintiffs cannot amend their [c]omplaint through an opposition brief." (citation omitted)).

Counts One, Two, and Three are, accordingly, dismissed.[8]

**B.      Count Four**

Defendant argues that Plaintiff's NJLAD claim should be dismissed because "[a]bsent from the [C]omplaint is any allegation tied to New Jersey." (Def.'s Moving Br. 8.) Plaintiff argues in opposition, however, that "[w]hile Plaintiff worked in North Carolina, the discriminatory decisions originated from [Defendant's] New Jersey headquarters . . . ." (Pl.'s Opp'n Br. 4.)

"The NJLAD . . . appl[ies] only to New Jersey employees or, in limited circumstances, to an employer's alleged wrongdoing directed at or committed in the State." *Papalini v. Sensient Colors, Inc.*, No. 11-6392, 2012 WL 1345353, at *3 (D.N.J. Apr. 18, 2012). Moreover, "New Jersey courts have consistently applied the law of the *state of employment* to claims of workplace discrimination, and therefore only apply the NJLAD if the claimant was employed in New Jersey." *Id.* (emphasis in original) (quoting *Peikin v. Kimmel & Silverman, P.C.*, 576 F. Supp. 2d 654, 657 (D.N.J. 2008)). Here, the Complaint lacks facts tying Plaintiff's employment or Defendant's alleged discriminatory conduct to New Jersey. (*See generally* Compl.; *see also id.* ¶ 1 (only noting that Plaintiff is an individual residing in North Carolina); *id.* ¶ 2 (only noting Defendant has its principal place of business in New Jersey).) Moreover, to the extent Plaintiff seeks to amend her Complaint through her arguments made in opposition to Defendant's motion regarding where the purported conduct took place, such an attempt is unsuccessful. *See Com. of Pa. ex rel. Zimmerman*, 836 F.2d at 181; *Wealth*, 2024 WL 3371354, at *6 n.11.

Without more, Plaintiff's NJLAD claim must fail. Count Four is, accordingly, dismissed.

---

[8] The Court need not reach Defendant's other arguments in favor of dismissal.

**C.      Count Five**

Plaintiff also asserts a common law promissory estoppel claim. (*See* Compl. ¶¶ 63-69.) Because the Court has dismissed all other claims brought against Defendant and there is no other apparent basis for subject matter jurisdiction over Plaintiff's remaining claim, the Court must decide whether to exercise supplemental jurisdiction. *See Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

Generally, the Court "must decline" supplemental jurisdiction unless "considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Id.* Here, none of these considerations warrant exercising jurisdiction over the remaining claim. The Court therefore dismisses the Complaint in its entirety. *See Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 567 (3d Cir. 2017).

**IV.      <u>CONCLUSION</u>**

For the reasons set forth above, Defendant's Motion to Dismiss is granted. Plaintiff's Complaint is dismissed without prejudice. The Court will issue an Order consistent with this Memorandum Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: ___5/26/___, 2026